IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHRISTINE F. BLAYLOCK,           §
                                 §
            Plaintiff,           §
                                 §
VS.                              §   NO. 4:06-CV-142-A
                                 §
JOHN SNOW, Secretary, Dept.      §
of Treasury, Bureau of           §
Engraving & Printing,            §
                                 §
            Defendant.           §

MEMORANDUM OPINION
and
ORDER

On November 3, 2006, defendant, John Snow, Secretary,
Department of Treasury, Bureau of Engraving & Printing ("BEP"),
moved for summary judgment on all claims asserted by plaintiff,
Christine F. Blaylock ("Blaylock"), in this suit.  Having
considered the motion, the response, the summary-judgment
evidence, and the applicable legal authorities, the court
concludes that the motion should be granted as stated below.

I.

Plaintiff's Claims

In this lawsuit, Blaylock contends that BEP, her employer,
failed to promote and retaliated against her in violation of the
Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq.
("Rehabilitation Act"), and that BEP violated her rights under
the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act").[1]

---

[1]In her original complaint Blaylock also alleged claims against BEP of
hostile work environment, constructive discharge, and the failure of BEP to
provide reasonable accommodations.  Pl's Compl. 3-4.  On November 3, 2006, BEP
filed a motion to dismiss those claims for failure to exhaust administrative
remedies and Blaylock filed a response stating that she was unopposed to BEP's

II.

<u>The Motion for Summary Judgment</u>

BEP maintains that Blaylock cannot establish a <u>prima</u> <u>facie</u> case of either of her discrimination claims.  Even if there were evidence establishing a <u>prima</u> <u>facie</u> case on her claims, BEP contends that it had a legitimate, non-discriminatory and non-retaliatory reason for not promoting Blaylock to her desired position.  Further, BEP contends that Blaylock's Privacy Act claim is time-barred by the applicable statute of limitations.

III.

<u>Background</u>

The facts set forth below are undisputed in the summary judgment record:

A.  <u>BEP and Blaylock's Employment History</u>

BEP, is a bureau under the United States Department of Treasury and is responsible for manufacturing the nation's paper currency.  Blaylock began her employment with BEP as a Printing Clerk at the Washington, D.C., location in January of 1990.  On November 13, 1992, Blaylock was transferred to a Clerk Typist position at BEP's Fort Worth, Texas, location and on December 13, 1992, was transferred to the Currency Controller position.  In November of 2000, Blaylock remained a Currency Controller but was transferred to the Mechanical Exam section under the supervision

---

motion.  On November 27, 2006, the court signed an order dismissing those
claims for failure to exhaust administrative remedies.

of Sylvia Franklin, the first line supervisor, and Terry Scott, the second line supervisor. Blaylock was temporarily promoted to Currency Controller Leader from March 11, 2001, to April 1, 2001. The temporary promotion was due to an agreement between BEP and the union that allowed for each Currency Controller to have an opportunity to be a Currency Controller Leader ("Leader"). Blaylock received a second temporary promotion to Currency Controller Leader from November 17, 2002, to January 26, 2003. The purpose of the second temporary promotion was to fill a vacancy caused by a Currency Controller Leader's extended leave. Blaylock's employment with BEP ended on May 12, 2005.

B. <u>The Currency Controller and Leader Positions</u>

Blaylock's claims for non-promotion and retaliation stem from BEP's failure to permanently promote her to the Currency Controller Leader position. This position's responsibilities consist of supervising Currency Controllers, ordering production materials, ensuring the continued flow of production and assisting section Supervisors when necessary. The promotions to the position for which Blaylock was not selected occurred in 2004 and 2005.[2]

C. <u>Blaylock's Attendance Record</u>

At the time when Blaylock's employment with BEP ceased, she had an annual leave balance of 2.75 hours and a sick leave

---

[2] Although Blaylock mentions a third promotion that occurred in 2001 in her response to BEP's motion for summary judgment, Blaylock's claim for failure to promote in her original complaint is based only on promotions occurring in 2004 and 2005. Thus, the 2001 promotion is not a part of the summary judgment evidence and the court will limit its analysis to the promotions in 2004 and 2005.

balance of negative 180.0 hours.[3]  BEP monitors its employees

unscheduled absences with an Attendance Tracking Record ("8805")

and uses the 8805 to determine if those absences reach a number

that would cause the employee to be placed on leave restriction.

During her employment with BEP, Blaylock was placed on leave

restriction on at least three occasions for having too many

unscheduled absences.

D. BEP's Selection Process

    When vacancy announcements are posted for positions with

BEP, it follows an evaluation and selection process contained in

Manual No. M-60-1.  See Def.'s App. 362-63.  Applicants are first

screened to ensure that they meet the minimum qualifications

required for the position, and those applications that meet the

requirements are then evaluated on the basis of the applicant's

knowledge, skills, and/or abilities ("KSAs") as they relate to

the desired position.  The selecting official may choose to have

the KSA ranking performed by a rating panel or he may opt for a

human resource representative to complete the ratings.  Next,

once the ratings have been assigned, a Certificate of Eligibles

listing the best qualified applicants along with their

applications are sent to the selecting official[4] and a decision

_____

    [3] While there is extensive documentation of Blaylock's absence record,
the court is satisfied that such details need not be recounted here.  Although
the parties dispute the reasons for and the significance of Blaylock's
absences, they do not dispute the amount of time she was absent from work.
Therefore, there it is unnecessary for the court to list that information in
this order.

    [4] Carolyn Moore, the Human Resources Specialist responsible for the
handling the vacancy announcements at issue in this case, stated that BEP's
"Human Resources office does not generally send a Certificate of Eligibles to
the selecting official that only contains the name of one (1) applicant when

4

of whether to interview all or none of the applicants is made.
Finally, the selecting official may choose an applicant from this
group of best qualified candidates but is not required to and may
select a candidate from other sources.[5]

E. 2004 and 2005 Leader Positions

Vacancy Announcement No. 2004-03-CJM ("2004 Leader
position") was posted on January 23, 2004.  Blaylock submitted
her application for the position and was listed as a qualified
applicant on the Certificate of Eligibles along with three
others.  All four qualified applicants were asked the same
questions in interviews conducted by Terry Scott, the selecting
official, Karen Riley, a Human Resource specialist, and Jill
Layton, a Systems Accountant.  One of the four applicants,
Liberty Beckel, was selected for the 2004 Leader position on May
14, 2004.  On this same day, Scott listed his reasons for not
selecting Blaylock for the position in a "Decline letter" stating
that although Blaylock "has a lot of knowledge and training as a
Currency Controller and has been temporarily assigned as a
Leader, she has serious attendance problems and was placed on
leave restrictions in 2003...."  Def.'s App. 553.  He concludes
the letter by acknowledging that "[t]here is no doubt that
[Blaylock] is technically sound...but her poor attendance record

---

other applicants are also determined to meet qualifications.  Agency policy
states that normally three (3) to five (5) candidates are referred in
alphabetical order to the selecting official."  Def.'s App. 364.

[5] What is required, according to that "[selections are to based solely
on job-related criteria.  Job-related criteria ... [including] recent
experience, attendance record, etc."  Def.'s App. 363.

indicates she would be a serious detriment to the Currency
Controller Section as a Leader."  Def.'s App. 553.

In 2005, there was a second opening for the position of
Currency Controller Leader and BEP posted Vacancy Announcement
No. 2005-07-CJM ("2005 Leader position").  Blaylock again applied
for the position and a rating panel was used to rank all of the
applications.  Following the rating panel's evaluation, Blaylock
was the only applicant to receive the minimum score necessary to
be characterized as "Best Qualified" for the position.  Terry
Scott was again the selecting official for the position and was
informed by Human Resources that only one applicant had scored
high enough to make the best qualified list.[6]  He then requested
that all applicants who had applied for the position be included
on the Certificate of Eligibles, which included Blaylock and two
others.  On March 1, 2005, Scott selected Terri Ivie for the 2005
Leader position.  Again, Scott's reasoning for not selecting
Blaylock was related to her attendance.  "As with the first
Leader selection process...[Blaylock] had serious attendance
problems and was again place on leave restrictions in 2004.  Ms
Blaylock's unscheduled absences are reflected on her form 8805
for the 2004 calendar year...[t]he issue that [she] faced with
both Vacancy Announcements was her leave abuse and unscheduled

---

[6] After receiving the results from the rating panel, Moore "contacted
Terry Scott to inform him that only one (1) applicant was Best Qualified and
asked him whether he wanted me to include all who met qualifications.  When
informing Mr. Scott that only one applicant had made Best Qualifications, I
did not tell Mr. Scott the name of the applicant" who had done so.  Def.'s
App. 365.

absences."  Def.'s App. 537.[7]

According to Scott, the issue of attendance was particularly important when filling leadership positions.

> The fact that Ms. Blaylock was placed on Leave Restrictions ... and could not seem to get herself removed from such leave restrictions was a paramount factor in my decision not to select her for the Currency Controller Leader positions.  Although Ms. Blaylock had the technical skills and knowledge which are important for a Currency Controller, regular attendance is absolutely essential for a Leader position. If the Leader is not present, the other Currency Controllers have no one to request support or to answer their questions for a particular process.  I needed Currency Controller Leaders that I could rely on and know they will regularly report for duty as scheduled.

Def.'s App. 537-38.

## F. Blaylock's Equal Employment Opportunity ("EEO") Activity

Blaylock's EEO activity began in 2001 when she was not selected for a Leader position and filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on her physical handicap (pregnancy) and her sex (female).  The EEOC judge found that pregnancy was not a disability, that Blaylock did not have any disabilities under the Rehabilitation Act, and that even if she had, the selecting official was unaware of any disabilities and based his decision solely on the strength of her application.

On September 21, 2004, Blaylock filed an informal complaint

---

[7] Terry Scott also documented his reasons for selecting Terri Ivie for the second Leader position.  "It was clear from Terri's attendance record that she is a very reliable employee with an excellent leave record.  This is very important due to the fact that reliability and attendance are very important to the position and its duties and weighed heavily in my selections." Def.'s App. 550.

7

with the EEO office complaining of her non-selection for the 2004
Leader position.  Blaylock asserted that she was discriminated
against based on a mental disability, for which she did not
disclose the specifics of, and for retaliation based on her 2001
EEO activity.

In January of 2005 Blaylock filed a second formal complaint
of discrimination with the EEOC.  This complaint alleged
discrimination based on her disability (severe depressive
disorder) and retaliation for previous EEO activity, in BEP not
selecting her for the 2004 Leader position.  Blaylock asserted
that Scott used her 8805 in not selecting her for the position
and that the 8805 contained information about her medical and
administrative leave related to her disability.  The claim of
discrimination was accepted in February of 2005, and the
Department of Treasury informed Blaylock that there would be an
investigation into whether she was discriminated against in not
being selected for the 2004 Leader position based on a mental
disability (severe depressive disorder) and retaliation for her
previous EEO activity.  In April of 2005 an investigation was
conducted into Blaylock's claims of discrimination.

On May 2, 2005, Blaylock amended her second formal complaint
to add a claim of discrimination and retaliation related to her
non-selection for the 2005 Leader position.  The amended
complaint was accepted by the Department of Treasury in June of
2005, and an investigation was conducted.

G. Facts Related to Blaylock's Privacy Act Claim

8

In March of 2003 Blaylock suffered from a nervous breakdown
and was admitted to a hospital until May 5, 2003.  When she
returned to work, she learned that some employees knew of
Blaylock's hospitalization.  In August of 2003 Blaylock was
accused of making a threat to one of her supervisors.  BEP placed
her on Administrative leave from August 9, 2003 until November
24, 2003.  When Blaylock returned to work in November, she
learned that some BEP employees had heard that she had been
placed on administrative leave because of her mental condition
and an alleged threat against a supervisor.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part
of a claim as to which there is no genuine issue of material fact
and as to which the moving party is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247 (1986).  The moving party has the initial
burden of showing that there is no genuine issue of material
fact.  Anderson, 477 U.S. at 256.  The movant may discharge this
burden by pointing out the absence of evidence to support one or
more essential elements of the non-moving party's claim "since a
complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts
immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25
(1986).  Once the moving party has carried its burden under Rule
56(c), the non-moving party must do more than merely show that

there is some metaphysical doubt as to the material facts.
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 586 (1986).  The party opposing the motion may not rest on
mere allegations or denials of pleading, but must set forth
specific facts showing a genuine issue for trial.  Anderson, 477
U.S. at 248, 256.  To meet this burden, the nonmovant must
"identify specific evidence in the record and articulate the
'precise manner' in which that evidence support[s] [its]
claim[s]."  Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994).
An issue is material only if its resolution could affect the
outcome of the action.  Anderson, 477 U.S. at 248.  Unsupported
allegations, conclusory in nature, are insufficient to defeat a
proper motion for summary judgment.  Simmons v. Lyons, 746 F.2d
265, 269 (5th Cir. 1984).

The standard for granting a motion for summary judgment is
the same as the standard for rendering judgment as a matter of
law.  Celotex Corp., 477 U.S. at 323.  If the record taken as a
whole could not lead a rational trier of fact to find for the
non-moving party, there is no genuine issue for trial.
Matsushita, 475 U.S. at 597.  See also Boeing Co. v. Shipman, 411
F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the
standard to be applied in determining whether the court should
enter judgment on motions for directed verdict or for judgment
notwithstanding the verdict).

V.

Analysis

10

A. <u>Blaylock Has Failed to Establish a Prima Facie Case of Discrimination or Retaliation</u>

To recover for discrimination under the Rehabilitation Act, a plaintiff must prove that she "(1) was an individual with a disability; (2) was 'otherwise qualified'; (3) worked for a 'program or activity' that received federal financial assistance; and (4) was adversely treated solely because of [her] disability."  <u>Kelly v. Boeing Petroleum Services, Inc.</u>, 61 F.3d 350, 365 (1995).  To establish a <u>prima</u> <u>facie</u> case of retaliation under the Rehabilitation Act, a "plaintiff must prove that: (1) [s]he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse employment action."  <u>Aldrup v. Caldera</u>, 274 F.3d 282, 286 (5th Cir. 2001)(citing <u>Long v. Eastfield Coll.</u>, 88 F.3d 300, 304 (5th Cir. 1996)).

Here, Blaylock claims BEP did not promote her based on her disability and that she was otherwise qualified for the position.  However, she completely fails to address the third requirement of proving her <u>prima</u> <u>facie</u> case of discrimination in that she never alleges, much less offers evidence, that the non-selection was based "solely on her disability."  <u>See</u> <u>Kelley</u>, 61 F.3d at 365.  Assuming Blaylock had a disability as defined by the Rehabilitation Act and that she was otherwise qualified for the position for which she was not selected, she still has the burden of proving that BEP's reason for not selecting her was based solely on her disability.  The summary judgment record is clear,

11

and Blaylock does not dispute, that her attendance was a motivating factor behind BEP's non-selection of Blaylock for both the 2004 and 2005 Leader positions.  Blaylock contends that her absences were because of her disability but she failed to adduce summary judgment evidence in aupport of that contention.  Thus, she has failed to make a _prima_ _facie_ case of discrimination.

Blaylock asserts in support of her retaliation claim that she was engaged in EEO activity, that she was not selected for a promotion, and that there was a causal connection between the EEO activity and her not being promoted.  While Blaylock has met her burden in proving the first two elements, she has failed to meet the requirement of adducing evidence of a causal connection.  See Aldrup, 274 F.3d at 286.  Blaylock's EEO activity began in 2001 and ended in 2005.  She claims that she was not selected for the 2004 and 2005 promotions out of retaliation for that EEO activity.  At best, Blaylock has shown that the selecting official may have known about her EEO activity.  There is no summary judgment evidence showing a causal connection between his not selecting Blaylock and her previous EEO activity.  The only summary judgment evidence on the subject is that the selecting official did not select Blaylock for the 2004 and 2005 promotions because of her record of poor attendance.  The summary judgment evidence is that poor attendance would not be acceptable for someone in a leadership position.  See Def.'s App. 537, 550. Thus, Blaylock has also failed to establish a _prima_ _facie_ case of retaliation.

B. <u>BEP Has Articulated a Legitimate, Non-Discriminatory Reason and Blaylock Has Failed to Show Pretext</u>

If plaintiff had been able to establish a <u>prima</u> <u>facie</u> case of discrimination or retaliation, summary judgment for defendant nonetheless would be proper under the evidentiary burden-shifting framework of <u>McDonnell Douglas Corp. v. Greene</u>, 411 U.S. 792 (1973), as modified by <u>Desert Palace, Inc. v. Costa</u>, 530 U.S. 90 (2003).  <u>See</u> <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 312 (5th Cir. 2004).[8]

Under the <u>McDonnell Douglas</u> framework, after the plaintiff establishes a <u>prima</u> <u>facie</u> case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions.  <u>Rachid</u>, 376 F.3d at 312.  If the defendant meets this burden, then plaintiff must offer evidence sufficient to create an issue of material fact "'either (1) that the

_____

[8] While the court in <u>Rachid</u> was applying the <u>McDonnell Douglas</u> test to a claim brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., ("ADEA"), its analysis is equally applicable to Blaylock's claim under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq..  In an unpublished opinion issued in 2004, the Fifth Circuit held that the <u>McDonnell Douglas</u> test applies to discrimination claims brought the Rehabilitation Act just as it does to claims brought under other federal anti-discrimination statutes.

Although the Fifth Circuit has not, in a published opinion, explicitly applied the <u>McDonnell Douglas</u> framework to discrimination claims brought under the Rehabilitation Act, every other circuit except the First and Eleventh has done so.  <u>Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown</u>, 294 F.3d 35, 48-50 (2d Cir. 2002); <u>Antol v. Perry</u>, 82 F.3d 1291, 1299 (3d Cir. 1996); <u>Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.</u>, 53 F.3d 55, 57-58 (4th Cir. 1995); <u>Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police</u>, 91 F.3d 836, 843-44 (6th Cir. 1996); <u>Tyler v. Runyon</u>, 70 F.3d 458, 467 (7th Cir. 1995); <u>Peebles v. Potter</u>, 354 F.3d 761, 766 (8th Cir. 2004); <u>Mustafa v. Clark County Sch. Dist.</u>, 157 F.3d 1169, 1175-76 (9th Cir. 1998)(per curiam); <u>Willimas v. Widnall</u>, 79 F.3d 1003, 1005 & n.3 (10th Cir. 1996); <u>McGill v. Munoz</u>, 203 F.3d 843, 945 (D.C.Cir. 2000).

<u>Handy v. Brownlee</u>, 118 Fed.Appx. 850, 854 (5th Cir. 2004).

13

defendant's reason is not true, but is instead a pretext for discrimination [or retaliation] (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" Id.  (quoting Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp.2d 854, 865 (N.D.N.C. 2003).[9]

Here, the summary judgment evidence established without dispute that Blaylock had a problem with keeping regular attendance at her job.  BEP asserts that this problem was the legitimate, non-discriminatory reason why she was not promoted to the Leader position.  Such a reason is a legitimate, nondiscriminatory one because, "an essential element of any ... job is an ability to appear for work ... and to complete assigned tasks within a reasonable period of time."  Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996) (internal quotation marks and citation omitted).

Blaylock argues that BEP's reliance on her attendance record was pretext for discrimination and retaliation.  According to Blaylock, the facts that she had twice been temporarily promoted to Leader and had received high marks on her 2004 performance rating prove that her poor attendance could not have been the real reason for BEP's decision not to promote her.  Blaylock also

---

[9]In analyzing BEP's motion for summary judgment, the court will only address the pretext alternative as Blaylock did not assert that BEP's decisions were based on "mixed motives" nor has the court found any evidence of such motives in the summary-judgment record.

asserts that problems associated with the applicants that were
selected for promotions in 2001, 2004, and 2005 are further
evidence of BEP's discrimination in deciding to promote others
over her.  However,  as the Fifth Circuit has repeatedly held,
"anti-discrimination laws 'are not vehicles for judicial second-
guessing of business decisions.'"  See, e.g.,  Mato v. Baldauf,
267 F.3d 444, 452 (5th Cir. 2001) (quoting Deines v. Texas Dep't
of Protective & Regulatory Serv., 164 F.3d 277, 281 (5th Cir.
1999)).

        The proffered evidence of pretext does not rebut BEP's
articulated reason for not promoting Blaylock.  The record is
clear that Blaylock was unable to regularly show up for work and
that, therefore, BEP determined that she was not suitable for a
supervisory role as was required of the Leader position.  Thus,
even if Blaylock had established prima facie cases of
discrimination and retaliation, those claims could not survive
summary judgment.

C. Blaylock's Claims Under the Privacy Act

        Under the Privacy Act, a party may sue a federal agency for
certain acts of wrongful dissemination of information.  See 5
U.S.C. § 552a(d)&(g).  Section 552a(g) states that "[a]n action
to enforce any liability created under this section may be
brought in the district court ... within two years from the date
on which the cause of action arises...."  The cause of action
arises when the plaintiff knew or should have known of the
alleged violation.  Davis v. U.S. Dep't of Justice, 204 F.3d 723,

726 (7th Cir. 2000).[10]   Claims under the Privacy Act are not
tolled by continuing violations.  Id. (citing Diliberti v. United
States, 817 F.2d 1259, 1261 (7th Cir. 1987).

Blaylock's Privacy Act claim must also fail.  Blaylock
alleges that BEP disseminated her personal information in
violation of the Privacy Act beginning in March of 2003 and that
she became aware of such dissemination when she returned to work
in November of 2003.  Further, Blaylock asserts that BEP
continued to unlawfully disseminate her personal information
throughout the rest of her employment.  Blaylock's original
complaint containing claims for BEP's violations of the Privacy
Act was filed in this court on February 24, 2006.   Assuming BEP
did in fact disseminate information in violation of the Privacy
Act, Blaylock knew, or should have known, of the violation in
November of 2003.  Thus, the statute of limitations expired on
that claim in November of 2005.  See § 552a(g); Davis, 204 F.3d
at 726.   Further, because the court agrees with opinion in Davis
and Diliberti that continuing violations do not toll the
limitations period, even if Blaylock could show that such
violations were occurring after November 2003, her claims would
be time-barred.  See Davis, 204 F.3d at 726; Diliberti, 817 F.2d
at 1261.

VI.

---

[10] The Fifth Circuit, in an unpublished opinion, cited the Davis case
and stated that "[w]e agree with the majority of other circuits that, under [§
552a(g)(5)] of the Privacy Act, a cause of action accrues when the plaintiff
knew or should have ahve known of the alleged violation." Smith v. United States,
142 Fed.Appx. 209, 210 (5th Cir. 2005)(citing Davis v. U.S. Cep't of Justice,
204 F.3d 723, 726 (7th Cir. 2000)).

<u>Order</u>

For the reasons discussed above, the court concludes that BEP's motion for summary judgment should be granted.   Therefore,

The court ORDERS that all of Blaylock's claims and causes of action against BEP in the above-captioned action be, and are hereby, dismissed with prejudice.

SIGNED December 21, 2006.

_____/s/ John McBryde_____
JOHN McBRYDE
United States District Judge